in its appearance which would indicate that any latent defect existed which in fact made its use dangerous. It is equally clear, therefore, that the jury might have found that nothing in the appearance of the staircase indicated that it was unsafe to use, more than would be any marble staircase. It cannot be said, as matter of law, that the latent danger which in fact existed in the use of the staircase was open and obvious. It must be assumed that the defendants themselves, when they erected it, did not intend to erect a structure so dangerous in character that people making ordinary use of it would slip and fall. Such fact only became apparent after the structure was erected and tested by actual use. Such condition was evidently no more obvious to the defendants than to other persons, and, had this plaintiff been injured on the first day that the staircase was used, doubtless no liability would attach to the defendants. But, so far as outward appearances were concerned, persons making use of the staircase would have the right to assume that it was safe. It was only after an actual test that the staircase was found to be dangerous. Such being the fact, it would seem to follow, as a necessary conclusion, that the latent danger which it possessed was not open and obvious to mere inspection. If this be the fact, then it is clear that the court could not say, as matter of law, that the plaintiff assumed the risks incident to its use. On the contrary, as the defendants themselves must be presumed not to have known of the inherent danger of the structure, so the plaintiff could not be charged with such knowledge as matter of law. When, however, by the actual test of use, it was found that the condition was dangerous, and that it could be made safe by a simple appliance, at comparatively little expense, the duty rested upon the defendants so to make it safe, and this obligation they owed to the plaintiff as well as to other persons. McGovern v. Railroad Co., 123 N. Y. 280, 25 N. E. 373; Slacer v. Engineering Co., 4 Misc. Rep. 493, 24 N. Y. Supp. 550. The obligation which rested upon the defendants was not discharged, and for such failure the jury would have been authorized to find the defendants negligent. The latent defect the jury would also have been authorized to find was not so visible and obvious as to charge the plaintiff with the risk of the use of the staircase. Both of these questions were for the jury to make answer. The dismissal of the complaint was therefore error, for which the judgment should be reversed.

Judgment reversed, and new trial granted, costs to abide the event. All concur, except HIRSCHBERG, J., who dissents.

---

In re BAKER.

(Supreme Court, Appellate Division, Second Department. March 6, 1900.)

EXECUTORS AND ADMINISTRATORS—ACTIONS—ABANDONMENT—LACHES.
    Where a creditors' petition for the sale of a deceased debtor's real estate was permitted to lie dormant for nearly 10 years, the surrogate was justified in dismissing the proceedings on the ground of laches.

Appeal from surrogate's court, Kings county.

Application by H. J. Baker, a member of the firm of H. J. Baker & Bro., creditors of Thomas Flanagan, deceased, to compel the administratrix to sell deceased's real property for payment of debts. From an order of the surrogate of Kings county dismissing the petition, the petitioner appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Horace Graves, for appellant.

B. P. Stratton, for respondent Kormic J. Flanagan.

GOODRICH, P. J. Thomas Flanagan died intestate in April, 1887, leaving, him surviving, a widow and several infant children. There was some personal property, but it was inadequate to the payment of the intestate's indebtedness; and in 1889 the members of the firm of H. J. Baker & Bro., including the appellant, obtained a judgment against the administratrix. In January, 1889, they presented to the surrogate of the county of Kings a petition for the sale of the real estate of the intestate. There is a conflict in the record as to what subsequent proceedings were had, but it is not disputed that nothing has ever been done since April, 1890, when, as the appellant claims, a decree of sale was made by the surrogate. The excuse presented for this delay is that it occurred at the request of the widow, but as there were other parties interested, including some infants, we do not consider the excuse sufficient. In 1899 an action for the partition of the real estate was commenced, in which an interlocutory judgment and decree of sale were made, and the premises sold in June, 1899; and apparently the purchaser refused to take title on account of the pendency of the proceedings for the sale in the surrogate's court. Accordingly one of the heirs applied to the surrogate for an order dismissing the proceedings. This order the surrogate granted, and from it the present appeal is taken.

Several objections are made by the respondent, going to the validity of the original order for sale, but we do not deem it necessary to consider them. We prefer to place our decision upon the ground that, although no opinion was written by the surrogate by which we can be informed of the specific reasons for his decision, he was justified in making his order by the fact that the creditors had been guilty of very great laches in allowing these proceedings to remain unmoved for a period of nearly 10 years,—long enough to justify the belief that they had been intentionally abandoned. Such discretion, in our opinion, was wisely exercised by the learned surrogate, and his order should be affirmed.

Order of the surrogate's court of Kings county affirmed, with costs. All concur.